UNITED STATES, Appellee

v.

RICHARD EUGENE KUBEL, Jr., Private First Class, U. S. Army, Appellant

1 USCMA 645, 5 CMR 73

No. 229

Decided August 29, 1952

LT. COL. Stewart H. Legendre, USA, 1ST LT. Patrick H. Thiessen, USA, and Stanley E. Schwartz, Esq., for Appellant.

LT. COL. Paul J. Leahy, USA, and MAJ. George B. Springston, USA, for Appellee.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused was tried by a general court-martial and found guilty of four offenses, all committed prior to the effective date of the Uniform Code of Military Justice. They consisted of (1) larceny of property of the United States Government in violation of Article of War 94, 10 USC § 1566; (2) unlawful sale of same property in violation of Article of War 84, 10 USC § 1556; and (3) and (4) two absences without proper leave in violation of Article of War 61, 10 USC § 1533. The accused was found guilty as charged, with certain exceptions and substitutions being made in the findings on the offense of unlawful sale, and he was sentenced to dishonorable discharge, total forfeitures, and confinement at hard labor for ten years. The findings and sentence were approved by the reviewing authority and a board of review in the office of The Judge Advocate General of the Army affirmed. The accused then petitioned this Court to review the record of his conviction, and his petition was granted on the sole issue of whether he was prejudiced because the law officer failed to include all the necessary elements of larceny (Charge I) in his instructions to the court-martial.

While the issue before this Court is concerned only with questionable instructions on the larceny offense alleged under Charge I, an intelligent disposition of the case requires consideration of the instructions given on the unlawful sale (Charge II). The specification of Charge I alleged that on or about April 19, 1951, the accused feloniously stole 80 blankets, valued at $648.80, property of the United States Government, furnished or intended for the military service. The specification under Charge II alleged that on or about April 19, 1951, the accused unlawfully sold to Kil Yon Ki, a Korean civilian, 80 blankets of the value of $648.80 issued for the use of the military service of the United States.

The record of trial discloses that the accused was on duty as a medical corpsman in the Evacuation Section, 4th Field Hospital, Korea, on the night of April 19, 1951; that at the time he took over his duties as relief, there were nine bales of blankets, sixteen blankets to a bale, in the evacuation section; that the next morning it was discovered that only four remained; that during the evening the accused transported the missing bales outside the hospital area; that they were taken to and unloaded at a road-side spot where they were picked up by Korean nationals; that four bundles were subsequently sold to the Korean named in the specification; and, that the remaining one was broken into lots and disposed of to others. Because of a variance between the specification of Charge II and the proof as to the number of bales purchased by the named individual, the court-martial made a finding on that Charge by exception and substitution. The particular changes will be dealt with later.

After the final arguments, the law officer gave the following instructions to the court:

"LO: . . . The court is advised that the elements of the offenses are as follows: Reading from paragraph 181h, page 252, Manual for Courts-Martial, 1949, under the heading 'Proof', sub-heading 'Stealing (larceny and embezzlement)'.

(a) (See 180g–Proof); and

turning to 180g we find the following under the subheading of 'Larceny':

(a) The appropriation by the accused of the property as alleged; and going back once again to page 252:

and (b) that the property belonged to the United States and was furnished or intended for the military service thereof, as alleged.

The second charge, the specification of which is laid under the 84th Article of War. Reading from paragraph 172a, page 224, Manual for Courts-Martial, 1949:

'Proof.—(a) That the accused soldier sold or otherwise disposed of certain property in the manner alleged; (b) that the disposition was wrongful; (c) that the property was issued for use in the military service; and (d) the value of the property as alleged.' "

Under the provisions of the Manual for Courts-Martial, U. S. Army, 1949, the stealing and sale of Government property are separate offenses and must be charged in separate specifications (See Paragraph 181h). The discussion and proof of the latter makes reference to larceny, which is treated under a different paragraph. This may account for the confusion of the law officer in giving his instructions on larceny. In attempting to combine the elements of larceny with those of selling property belonging to the United States, he missed reading two of the elements required to establish the crime of larceny. These were, the value of the property, and, the intent to deprive the United States permanently of the property. Apparently the error escaped detection as no one suggested any element had been overlooked.

We have firmly established the rule that the failure to give instructions embodying all the necessary elements of the offense is error. We have also announced the principle that a mere reference to the Manual will not suffice. Accordingly, the only question to be determined is whether, under the peculiar facts of this case, the error was prejudicial to the substantial rights of the accused.

A fact which distinguishes this case from others considered by us, and in a sense makes it sui generis, is that after the court-martial retired to deliberate on the findings, it reopened, the president announced that the members had arrived at a finding but that the court desired the law officer to assist in rewriting the specification of Charge II to show a fewer number of blankets unlawfully sold and at a consequent lesser value than alleged in the specification. The court, in keeping with the evidence, found a sale to the person alleged in the specification of only four bales or 64 blankets. The value had been stipulated at $8.11 per blanket and this reduces the total value of the stolen property to $519.04. Accordingly, the finding made by the court on the second charge was couched in the following language:

"Guilty, except the words and figures 'eighty (80)' and '$648.80', substituting therefor, respectively, the words and figures 'sixty-four (64)' and '$519.04', of the excepted words and figures, Not Guilty, of the substituted words and figures, Guilty."

Counsel for the accused do not contend that the instructions given on the unlawful sale of the blankets are inadequate or incomplete and there is no question but that the elements of that offense were delineated clearly in the law officer's instructions. Therefore, in order to return the finding it did on the wrongful sale, the court-martial was required to find, beyond a reasonable doubt, that the blankets were worth $519.04 and they were sold by the accused to the Korean national named in the specification.

Similar reasoning can be advanced to establish that the court-martial specifically found the requisite intent to deprive the Government of the property permanently. The second charge alleges the sale of the blankets to the named Korean, and the evidence estab-

lished that he paid the sum of 430,000 won to the accused as consideration for the sale. Possession of the blankets was delivered without reservation, there was no evidence of any transaction other than an attempted transfer of the title to the blankets for the money, and the negotiations were veiled in secrecy. An unconditional sale is generally understood to imply a transfer of ownership with the purchaser acquiring the right to deal with the property as his own. Implicit in such a transaction is an intent to forever deprive the true owner of his property. Particularly is this true when the sale is conducted surreptitiously. Clearly a finding of guilty of the wrongful sale under the circumstances of this case closes the door to any reasonable possibility that the court-martial could find an intent on the part of the accused to temporarily deprive the United States of the blankets.

It could be that the members of the court-martial read the appropriate paragraphs in the Manual but assuming they did not, the elements of the two offenses do not differ greatly and the facts adduced in support of the two charges show a single continuous transaction from the theft to the sale. The identical blankets were involved, the value was the same, and the sale of the property, under the circumstances shown, establishes an intent to deprive the Government permanently of its interest in the property without its knowledge. The court-martial could not reasonably find elements present in one aspect of the transaction without finding them present in the other.

While we have condemned incomplete instructions, when as here, the record conclusively establishes that the court-martial affirmatively found the presence of the missing elements, we are not prepared to hold that the error materially prejudiced the substantial rights of the accused. Rather, we are convinced that the error committed by the law officer was rendered non-prejudicial by the specific finding made in this case.

The decision of the board of review is affirmed.

Chief Judge QUINN and Judge BROSMAN concur.